In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1544

CHANCE T. KELHAM,

*Plaintiff-Appellant,*

*v.*

CSX TRANSPORTATION, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:12-cv-00316 — **Andrew P. Rodovich**, *Magistrate Judge.*

ARGUED SEPTEMBER 22, 2016 — DECIDED OCTOBER 27, 2016

Before BAUER, POSNER, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, Chance Kelham, a railroad engineer, sued the railroad that employed him, accusing it of having negligently caused him to be injured, for which he seeks compensation under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.* The case was tried to a jury, which exonerated the railroad, precipitating this appeal.

On the day of the accident that Kelham claims caused his injury, he was driving a mile-long freight train comprised of two locomotives and 69 empty cars. Ordered to halt the train briefly on a parallel track to enable a train with a higher priority to pass it, Kelham duly halted his train. Unfortunately another train, which was also supposed to wait on the parallel track, failed to stop at a red stop signal and collided with Kelham's train from behind. Because of the length of his train and the weight of its locomotive (212 tons), the collision caused the locomotive to lurch forward slightly. A mechanical engineer testifying for the railroad compared what a forward-facing video camera attached to the front of Kelham's locomotive showed to what was shown by a video camera attached to another locomotive of the same make and model. That locomotive was placed in the same location on the tracks as the locomotive of Kelham's train when it had begun its lurch, and was then moved slowly forward so that the video from its camera could be compared with the video from the camera attached to the front of Kelham's locomotive. The comparison indicated that the lurch forward could not have exceeded seven or eight inches, or lasted more than a third of a second—numbers that the engineer testified indicated that the train had accelerated as a result of the collision at an average of 13.5 feet per second squared.

Kelham complains that the engineer compared the two videos by eye rather than by mathematical calculations, didn't measure the height of the camera on the comparison locomotive, and didn't account for the "bounce and shudder" movement of the train. But the trial judge correctly ruled that these objections could be adequately explored on cross-examination.

Kelham's claim that the locomotive "bounced" vertically is implausible given the locomotive's weight and the slightness of the lurch, and while he points to testimony from Knipp, the other conductor in the cab at the time of the accident, that the locomotive "bounced … back and forth," that isn't the same as bouncing up and down. Kelham also claims that the "bounce and shudder" are visible in the video of the accident, but CSX's expert, who watched the video, disagreed, and the jurors were shown the video at trial and could decide for themselves. The jury rejected Kelham's challenges to the railroad's testimony, awarding judgment to the railroad.

The railroad concedes that the accident was caused by the negligence of its employees—the crew of the second train who ran the red light; the issue is whether the lurch resulting from the impact of the second train when it collided with Kelham's train caused the injuries of which he complains. He testified that when the lurch occurred he'd just risen from his seat in the locomotive cab and begun to walk down the three stairs to the locomotive's bathroom. The stairwell faced forward, so someone walking down the stairs would be facing the front of the train. Kelham claims that as he began to walk down, the lurch from the impact caused him to fall forward—almost indeed to somersault—down the stairs, causing a serious injury to his back which aggravated a condition that he had called "spondylitic spondylolisthesis"—the forward slippage of a vertebra—which had been asymptomatic before the accident but afterward required surgery.

A biomechanical engineer testified for the railroad that the forward lurch of the locomotive should have pushed

Kelham backward rather than forward, since he was facing the front of the train at the time of the accident. If you're sitting in the back seat of a taxi stopped for a traffic light, then when the light changes and the cab surges ahead you'll feel yourself pushed against the back of your seat, while if the taxi was moving and then slowed or stopped you would feel yourself pushed forward, toward the divider between the front and rear seats. The engineer further testified that if the lurch had pushed Kelham backward without causing him to hit the back wall of the locomotive cab, it would have been too weak to injure him. In addition the train conductor sitting next to Kelham in the locomotive cab did not see him fall when the locomotive lurched. And for days after the accident he told no one that he'd fallen, even though he spent a good deal of that time with coworkers, supervisors, and medical personnel. Nor had he any bruises or any other visible injuries from the fall, even though he testified that at the end of the somersault his back and neck were against a bulkhead door and his feet were over his head. He argued that the biomechanical engineer had ignored the "bounce and shudder" and assumed he'd been positioned upright at the time of the accident, while he claims that he was learning forward, that the studies cited by the engineer of how people who are standing on a platform react when the platform moves don't apply to someone who is walking down stairs, as Kelham claims he was, and that the engineer did not cite studies on the aggravation of spondylitic spondylolisthesis specifically—but again the trial judge correctly ruled that Kelham's objections could be explored on cross-examination, and the jury didn't have to believe him.

There is no question that Kelham has serious back pain, but the railroad presented evidence that the pain preexisted

the forward lurch of his train. Indeed he'd begun complaining of back pain in 2007, four and a half years before the collision, and the pain had worsened over time. An MRI on October 5, 2009 revealed a herniated disc and a bulging disc, along with the spondylitic spondylolisthesis. On the recommendation of an orthopedic surgeon he was given a "nerve root block" (a strong anesthetic) a week later and in the following months received epidural steroid injections from a pain management specialist. A few weeks after the nerve root block he complained of pain and obtained prescriptions for morphine and Vicodin—opioid pain medications—and had continued to receive and fill prescriptions for the drugs up until the time of the accident, including five times in the five months immediately preceding it.

His back pain persisted after the accident, eventually leading him to have surgery; we say "persisted" because by his own admission it was similar to the pain that he had experienced and taken opioids to alleviate before the accident. Indeed he told medical staff—repeatedly—that he was seeking treatment for symptoms that he'd been experiencing for years. And indeed the surgery he had was for the same back pain for which he'd taken opioids before the accident. His post-accident surgeon conceded in a deposition that "surgery was an option for [Kelham]" before the accident, and that he would defer to CSX's expert on whether the lurch could have caused Kelham's post-accident symptoms. And Kelham's pre-accident doctor conceded in a deposition that the spondylitic spondylolisthesis, which Kelham claims became symptomatic only after the accident, could have been responsible for some of his pre-accident symptoms. Indeed it would be a miracle had those symptoms vanished right before the lurch (they couldn't have vanished a significant time

before it as otherwise he would have stopped taking the opioids, which are dangerous medicines), only to recur—the identical symptoms—as a consequence of the lurch. And the trial judge correctly rejected Kelham's objections to admitting the evidence about his history of back problems and the unfavorable statements from the depositions of his pre- and post-accident doctors.

After the surgery he was advised to undergo physical therapy, which his medical records indicate that he did but only intermittently, and though he has only modest functional limitations, which would not prevent him from working in some capacity for a railroad, he has declined to seek reemployment in the railroad industry. It was not unreasonable for a jury to find that Kelham had fabricated the claim that he was injured by the lurch, as unless the railroad bought his story it would not be required by the Federal Employers' Liability Act to compensate Kelham for the cost of the surgery that he needed to repair the consequences of pre-accident ailments for which the railroad was not responsible. The jury was entitled to conclude that the negligence of the railroad that resulted in the collision and ensuing lurch had no causal relation to his injuries—that, to repeat, the injuries were the product of ailments that preceded the lurch.

AFFIRMED